The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner of home or business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give their attention for the court is now sitting. God save the United States and its Honorable Court. Good morning. Please be seated. Welcome to the 4th Circuit. Judge Quattlebaum and I are joined today by our colleague, Judge Rushing, who is in Asheville. And so I would tell the counsel in all cases, if they hear a noise from the television or they see her hand, you should stop so she can ask you a question. With that, we'll begin with the United States v. Smith. Mr. Parrott. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Robert Parrott and I represent the appellant, Allen Martin Smith. The police received the video in this case in a text message from a guy by the name of Randy. The video became the linchpin of the government's case against Mr. Smith. The evidentiary issue at the heart of this case is really straightforward, and it doesn't depend on the fact that we're talking about a video. So did he deny that he was one of the individuals in the video? He didn't take the stand one way or the other. He didn't dispute it. No stipulation of fact or anything else? Correct. All right. The same analysis would apply if, for instance, Randy came in off the street to the police station and he had a ledger that he handed to the police and claimed, proved that Mr. Smith committed fraud. If the police then just accepted the ledger at face value and the government brought a case and it was shown to the jury and Mr. Smith were convicted based on that ledger, with nobody bothering to ask Randy where the ledger came from, that's the same situation that we have here. The ledger wouldn't have his picture or his voice. Sure. And the authentication analysis here is not about authorship. It's not about whether or not he's there. There are two issues presented here. One is whether or not the government established that it was taken on the date in question. But even if they did, there's still the issue of the production of the video, in other words, whether it was altered or edited in some material way. And the government has the burden of establishing that it hasn't been altered or edited in some material way. There were failures at three different levels here. First, the police failed to ask Randy where he got the video. Second, the government brought this case without asking law enforcement where they got the video. And finally, the district judge allowed the jury to see the video, again, without asking where this video came from. This is the federal government of the United States of America. This should be the most sophisticated justice system in the entire world, and this is what we're getting? I think it's important to note, too, that Smith is not making a confrontation clause argument here. So, counsel, I hear you on those points. And putting aside the alteration issue, just for the sake of this question, as Judge Enge said, we have your client in the video. You raised the point about when it was. And granted, that may be somewhat of an issue. But doesn't the fact that there's testimony that they're leading in a vehicle, doesn't the video itself, is it inconsistent with that testimony? So in terms of timing, in terms of, I think we have evidence from the overall circumstances from which you could say, hey, this is all lining up together. This is consistent. We know it's him. We know who he's with. We know they're fleeing. So it seems like a lot of that stuff gets addressed. That doesn't completely answer your question about whether it's been altered in any way. But it seems to me without, for the other issues, the nature of this evidence does a lot to authenticate it. Well, I think that there are some consistencies between the internal patterns and characteristics of the video that are consistent with some of the other evidence presented at trial.  But there are also some aspects of the video that are inconsistent with the evidence presented at trial. For instance, the nature of the gun. The shiny silver plate with the serial number on the bottom of the gun that's not apparent in the video, I think that's inconsistent. Well, actually, in certain places you can stop the video and you see some sort of a silver rectangle on the gun or what could appear to be it. So I don't think it's accurate to say it can't be observed at all. Noted. I wasn't able to see it, but if Your Honor was, you're up there and I'm down here. So it's your call. Also, there's a difference, isn't there? Let's say it's unclear. You can't tell for sure if it has that silver plate or not. There's a difference, I think, in saying inconsistent and inconclusive about that. For example, he's moving it around. The lighting's different. Sure, you could say it's not as obvious there. Maybe I can't see it there. Maybe you can. But the fact that if we had a side-by-side in still motion, light down on them, one has the plate, one doesn't, that would be inconsistent. The fact that it's not as apparent or maybe even I can't even tell for sure, I'm not sure that makes it inconsistent. You see what I'm getting at? I do understand what you're saying. I think a district court, in other words, is looking at the overall circumstances, and they can say in a district court, in an abuse of discretion sort of standard, would be able to say, hey, given all this, at least from the identity of the defendant, the timing, that much we have from the circumstances. It seems to me what you really almost have to rely on is the alteration or potential alteration. Well, I think the alteration is independently an issue. And the Johns case that I discussed in the reply brief speaks to that. I mean, it's almost the same case, but the shoe is on the other foot. In that case, the defendant attempted to introduce printouts of conversations that she had with the alleged victim. And the issue that the district court had in that case was that we didn't know who printed them out. We didn't know whether they were printed in some format that allowed them to be edited. And the fact that they weren't obtained directly from America Online in that case was sufficient for the court to say, you haven't authenticated these, and they need to be excluded. And so I think even if we accept that based on some consistencies between the video and the other evidence presented at trial, even if we assume for the sake of argument that this was recorded on the date of question, that still doesn't solve the authentication problem. And government makes virtually no effort to prove that it hasn't been alterated. In fact, the officer on the stand acknowledged that it may have been altered or edited in unknown ways. So what impact does it do? Keeping in mind technology is not my long suit. But as I understand it, this is a Snapchat video and those are short-lived, maybe in terms of a day or two or hours. How does that impact the authentication question? Well, Your Honor, first, I think that there's an assumption that this is a Snapchat video. What Officer Carter actually testified to was this resembles a Snapchat video. He had seen them before. It might be a Snapchat video. I'm not sure that that's enough to prove that it is a Snapchat video. But even if it is, in a typical case, what the government will do generally is they will subpoena Snapchat. And Snapchat will produce these videos in response. And they'll get a certificate of authenticity from the custodian of records from Snapchat. And that solves virtually all these issues because they're getting it straight from the source. For example... Did you argue that below? Is that in your brief? That they'll typically get it from Snap... that they'll typically go directly to the source? Yes. I didn't mention that in the brief. No, sorry. All right. But it is typically what they do. And I think it's a valid thing to consider when the government is pointing out that these things disappear. For instance, in United States v. Colbert, which was a case in the District of Kansas recently, the government submitted two preservation requests under the Stored Communications Act, which required Snapchat to preserve the records at issue. And they were able to... Is that required? Yeah, I think you make a good point that that's the best practices. And things could have been done differently here. But does that really result in a basis for saying there's not enough to authenticate this video, given the other issues we've talked about? Well, when the officer does say that there was no alterations from the time it came to the officer, I grant you that's not pre that time. And there's no indication... Maybe that's a hard thing to do. But there's no apparent evidence of alteration. Does that matter, that there's nothing that jumps out as if suggesting there was some alteration? Are you saying that's just an impossible thing to detect? It's an impossible thing to detect. I also think that it does matter that the fact that the officer said that it hadn't been altered or edited since he got it doesn't really solve anything. It solves something, it just doesn't go backwards, it goes forwards. Well, I think if we go back to the example of the ledger, for instance, if Randy altered or edited the ledger, even if we assume it's Mr. Smith's ledger, if he altered or edited it in some way that Mr. Smith was unable to disprove, then the government still hasn't authenticated it. The burden of authenticating the evidence is on the government, not Mr. Smith. It sounds like we're kind of conflating what I think are maybe two distinct concepts. One is authentication. Is the thing what the government claims it is? And then another is best evidence, which is where we get to, well, is it a duplicate? Has it been altered? And in the context of best evidence, don't we put the burden on the challenger to come forward with some suggestion that there has been a change or an alteration to the duplicate? In the concept of the best evidence rule, once the government establishes that it is a duplicate, yes, Your Honor. However, authentication by itself has two distinct aspects. One of them is, in this case, is the content of the thing. And in this case, what we're talking about is the time when it was recorded. There are other cases where authorship is the issue, like Judge Agee pointed to. That's not the issue here. The second aspect of authentication that's important is the production of the thing. Even if a video was recorded on the date in question, was recorded by the person in question, if it's been altered or edited in some material way, and even if it's the original, Judge Rushing, even if it's not a duplicate and the best evidence rule isn't implicated, even if we're talking about the original thing, if it's been altered or edited in some way that destroys its evidentiary value, the government still can't authenticate it. Well, the government says this is a video of the defendant on the date in question that we got from Randy, right? And so it would seem the authentication question is, can the government make a prima facie case sufficient to go to the jury for the jury to decide if this really is a video of the defendant on the date in question that they got from Randy? And you have the officer's testimony, but you also have Mr. Pineda, the other gentleman who testified, and he testified to the content. He said, you know, the defendant told me they made a video. He made these hand gestures. You know, doesn't that go a long way towards giving the jury a basis for deciding that the video is what the government claims it is? That speaks to the content of the video. And, again, it's these exact same arguments were made in the Johns case, and in Johns they discussed the best evidence rule, but they also discussed authentication, and the judge kept it out under both bases. And in Johns the defendant argued there's no question that these are e-mails exchanged between the victim and defendant, which is what you're saying. It's the same content-based authentication argument. And the district judge in that case said, we don't care about that. My issue is, where did it come from? You didn't get it from America Online. You got it from who knows who, and that's the same issue that we have here. And I think it's important to point out the government relies heavily on some case law saying that a missing link in the chain of custody typically goes to weight, not admissibility. Those are confrontation clause cases. Smith is not saying here that the government needs to call every single witness in the chain of custody. Some of them might need to testify. What Smith is saying is they need to at least know where the video came from. They need to at least know who's in the chain of custody. And they don't know that here. This video just came out of the sky. It came out of thin air. We don't know if Randy had an axe to grind. We don't know where Randy got it from. And I think it's important to disentangle those two issues. In the authentication and context, and when we're talking about production, the burden is on the government to establish that the video hasn't been altered or edited in some material way, and they haven't done that here. I'd also like to point out that the government has argued that even if the district judge erroneously admitted the video here, that the admission of the video is harmless and asks this court to resolve this case on harmless error review if it finds that the district court committed error, which it did. It's important to note that this court's harmlessness inquiry is not a sufficiency of the evidence test. And that's what the government argues, essentially, is that there's plenty of other evidence. But the issue is whether this court can say with fair assurance that the error in admitting the video didn't sway the jury's deliberations and didn't have an impact on the outcome of the case. Video evidence is powerful. It's highly persuasive. And I don't think that the court can say here with fair assurance that the video didn't have an impact on the jury's deliberations. All right. Thank you, Mr. Parrott. You've got some rebuttal time. Thank you, Your Honor. And now we'll hear from Ms. Allen. Thank you, Your Honor. Katherine Allen on behalf of the United States. The question before this court is whether the district court abused its discretion in admitting the video and finding that the government had presented prima facie evidence from which the jury could conclude that the video was filmed, the video of the defendant holding the weapon was filmed on February 22nd. And there's three categories of evidence that the government presented that satisfied that burden. The first is the content of the video itself. It shows Smith and Piper in a moving vehicle that Piper is driving. They're bragging about fleeing. And it shows them waving a black handgun just like the black handgun that was found next to the car that they abandoned at the end of the high-speed chase on February 22nd. The second category of evidence is Smith's admissions to Panetta that he and Piper made a Snapchat video of themselves swinging around the gun and threatening people on February 22nd during the high-speed chase. And then the third category of evidence is Major Carter's testimony that he received the video on February 22nd from a repeat informant. And, again, the government's not arguing that that in and of itself, that the date of receipt in and of itself establishes the date that the video was filmed. But we think that all of that evidence together satisfies the low burden of the prima facie requirement of showing that the video is what the government claimed it was. Don't we have, I mean, isn't this, the defense's position maybe becoming more and more important the more people are able to do things with videos, create videos that are false? I mean, we're in a world that seems, you know, a far cry from what it used to be. And, you know, with videos being created that are not authentic at all, does that factor into our analysis that we kind of turn a blind eye to the technology advances that make creation, alteration, and all sorts of things to electronic images way more possible? Your Honor, it's true that those things are possible. And, you know, there might be cases that present interesting questions about what has been done with a particular video. But with respect to this case, in this video, Smith has never contested the key aspects of the video, that it shows him holding a black handgun in a moving vehicle with Piper bragging about fleeing. And all he's done is- What do you mean he hasn't contested? He didn't testify. So, I mean, he didn't contest or concede anything about the video, right? Sorry, Your Honor. I meant in his briefing. He hasn't even, you know, argued. He just offers complete speculation that the video has been altered. And this is after, you know, the question is- He doesn't say it's been altered. He says it's a video that we don't know anything about, and it's your obligation to give us, give the court something to show that. I don't think he's saying it has been altered. He's saying you have an obligation when you're coming in front of the court to make sure that there's more in terms of authentication than we have here. That is his position. And I think, you know, the question before this court, again, is whether the district court abused its discretion in determining that the government had presented prima facie evidence that the video is what the government said it is. And I think we did present that prima facie evidence, as I described earlier. And then in response, he says, oh, but it might have been altered. The government also has a burden to show that it wasn't altered. And I think if we look at the text of the rule and what the government was required to do here, it was to present prima facie evidence that the video is what the government claimed it was. And we satisfied that burden. He elicited testimony on cross-examination from Major Carter that the video might have been altered. He argued in closing argument that the video might have been altered, that we didn't know, that the jury didn't know when it was filmed. And ultimately these are questions- What did the government call Randy as a witness? I'm not sure, Your Honor. Why not get the information from the technology company where it came from, Snapchat, if that's what it was? Again, I'm not sure, Your Honor. And Smith didn't raise a best evidence challenge below. So the government didn't have, you know, an opportunity to present evidence that the original no longer existed at the time of trial. But as, you know, general knowledge is that the distinctive feature of Snapchat videos is that they disappear within 24 hours. And again, the government's not- But that doesn't mean- You could disprove probably lots about what I'm about to suggest, because I'm not a Snapchat expert, unlike Judge Agee. He seems to have a good bit of information about it. But even if it disappears from the phones of the senders, does that mean it disappears from Snapchat's records? I'm not sure, Your Honor. And the reason we don't know is because he didn't make this argument below. So the government wasn't put to the task of introducing evidence about how Snapchat works or what files are retained and things like that. So how would it affect your case if you didn't have Mr. Panetta, whatever his name is, if he wasn't there and available to testify? How would that affect your case? Well, certainly we think that Panetta's testimony was strong evidence of the defendant's guilt, because Smith admitted to Panetta that he had the high .9-millimeter handgun on February 22nd. Right. I understand that's very good evidence for the government, no doubt about that. But if that had not existed, would that change your case? In terms of the sufficiency of the evidence or the authentication? Both. I don't think so, Your Honor. I mean, I think we have sufficient evidence and the video is authenticated aside from that. But, again, I don't believe that Smith is arguing that Panetta's testimony should have been excluded. I think, as I mentioned at the outset. No, I'm just assuming in a hypothetical that there was no Mr. Panetta. So what you've got is the major who says, I got this. I think it's a Snapchat. I got it from this guy, Randy. He's a confidential informant I've used before. And that's the video. And it shows events like we've charged. I mean, is that sufficient? Well, I think it's a very fact-bound inquiry, Your Honor. I think in this case, because of the particular, all of the testimony about the events of February 22nd, including the fact that the jury saw the gun and could look at the video and say, that's the same gun, that there was evidence that would meet the low burden of establishing the authenticity. But, again, the Court doesn't need to reach that here because there is Panetta's testimony. And Smith admitted to Panetta that they made the Snapchat video on February 22nd. Doesn't that testimony just seem odd? I mean, he admitted to Panetta that he made a Snapchat. I mean, I guess what happens in jails is lots of things may seem odd to people. But it just seems remarkable that you're sitting in the jail cell and, hey, by the way, we made a Snapchat video. And it just so happens to do the authentication work that maybe we wouldn't have had the ability to do without that. And maybe that's just going to this witness's credibility as an informant. But, anyway, I just found that testimony remarkably odd. Your Honor, as I read the testimony, Panetta testified that Smith sort of told him the story of why he was there that day and what had happened. And the story of what had happened started with the beginning of the day when Smith was wanted for parole. I believe Panetta testified that Smith had cut his ankle bracelet off and so had called Piper, who was in his gang, so that they could hide out together. And then Panetta tells the whole story. And a lot of that information is corroborated not just by the video but also by the testimony of the other officers. And those are some specific facts. I'm sorry. Go ahead. I didn't mean to cut you off. Just some specific facts about the fact that the gun was dropped on the other side of the fence. That the gun had one bullet in it and no magazine. And that it was the same magazine that Piper had been caught with a few weeks prior. And so a lot of the details of Panetta's testimony were corroborated by the testimony of the other officers who testified about what happened during the high-speed chase and their investigation of the case. Your colleague places emphasis on the Johns case. What's your position about how that case applies here and that it helps Mr. Smith's argument? Sure, Your Honor. So, first of all, the Johns case is an unpublished decision of the Sixth Circuit. I think one of the key distinguishing features is what happened in district court. In that case, it was the district court that excluded the evidence. And so the question on appeal was whether excluding the evidence was an abuse of discretion. That's a very different posture than we have here where the court admitted the evidence and the question is whether that's an abuse of discretion. So, Johns is not an example of a court of appeals overturning the district court's exercise of its discretion. And again, I think if you read the district court opinion, what was motivating the district court, I mean, one of the things was that the printouts that were at issue there were created likely by the defendant in preparation for trial, 16 years before the trial that actually took place. And so I think, you know, authentication is a very fact-bound inquiry, and I think the facts of this case are much different than Johns. So I don't think it ultimately supports Smith here. I'm asking this question because I don't know. How difficult, what steps would you have to go through if, for instance, in trying this case, you had sought to summons or subpoena Snapchat or whoever the Internet provider was, to produce either a witness or an affidavit to authenticate this particular video? Do you know what's involved to do that? I don't, Your Honor. And again, you know, I'm unsure whether Snapchat would even still have the files, you know, a long time after the events had taken place. But again, you know, of course the government could have done more in this case, and that's not the question here. The question is whether the district court abused its discretion in finding that the government had met the prima facie burden under Rule 901. And we think, you know, for all the reasons that I've laid out and that are in our brief, that the government did. Well, assume for purposes of argument we were just going to kind of skip over all that, go straight to harmless error. What's your argument on that? Our argument on harmless error is that, I mean, Smith admitted to Panetta. There was testimony at trial that Smith admitted to holding the gun on the date in question. And that's very strong evidence. And then as I mentioned before, so that comes in the form of Panetta's testimony. And as I mentioned before, the testimony from the other officers corroborated Panetta's testimony. So we think that, you know, an admission by the defendant is very strong evidence. And although there were credibility issues with Panetta, his testimony was corroborated by the specific facts that he told about what had happened that day, which lined up exactly with the testimony of the other officers. So we, you know, our position is that even if it was improper to admit the video, it didn't substantially sway the jury in this case, and that error was harmless. Do you have anything else for us this morning? No. If there are no further questions, we urge the Court to affirm. All right. Thank you very much. Mr. Parrott, we'll hear your rebuttal. Thank you, Your Honor. First, I'd like to address one of the questions that Judge Quattlebaum asked about how long information is stored on Snapchat In United States v. Colbert, the case I mentioned earlier, 2024 W.L. 209-1995, the government was able to get media from Snapchat servers 96 days after the incident in question. That was media? That just wasn't, like, metadata that indicated something had been transmitted? My recollection is that that was media, but they definitely can get media as well as metadata. United States v. Herrera is another example. They got over 1,000 media files by serving a subpoena on Snapchat's server. I'd also like to point out that I'd like to correct something that the government has said in its response brief and in its argument just then. The government has characterized Randy as a repeat informant, but I think the government is playing fast and loose with the facts there. What was actually stated at trial is that Officer Carter knew Randy from previous investigations, but it's not clear whether he was an informant in those investigations or whether he was the target of those investigations. I'd also like to point out the government, when it's talking about its authentication of the production of the video, it cites several cases for the erroneous proposition that they don't have to produce evidence of when, where, or how it was created. But there's a Texas court of appeals case that looked at this exact issue. It's Angleton v. State, and that's referenced in the reply brief. In Angleton, although it's a state case, they did a survey of how federal courts have addressed this issue, and they found that federal courts often admit evidence without foundational proof of when, where, how, or by whom it was created when those recordings were recovered from the defendant or a co-defendant were not created as a result of government involvement and were not tampered with. So those are some key limitations here. The manner in which the evidence was obtained matters. In these cases, when the government can admit things without evidence of when, where, or how it was created, the government went out and affirmatively seized the evidence. And that's important because if you think about the way that a search warrant, for example, gets executed, they don't give the defendant a heads-up that they're coming to search them. They do that so that the defendant doesn't destroy evidence or tamper with it. When you seize evidence from a defendant, you have some assurance that it hasn't been altered.  Because they're not expecting it. That would make the government's case stronger had that happened. There's a difference in having the strongest case for which you could have and having a sufficient totality of the circumstances that this is authentic. Well, I think that by default, the government does have to prove that they offer the evidence to illustrate something that happened on a particular date. I do think that the default rule is that they have to establish when it was created. And the Oriot case from this court shows that. And the argument is they did produce evidence about when it was created. It may not be they have someone who said, I did it on this date, but they have Panetta saying what Smith said. And they have the evidence from the video itself that shows these folks were on the run in a car when there's a lot of evidence that they're on the run in the car. So when it was done, you may want it to be better, but there's evidence of when it was done. Sure. And going back to what we spoke about earlier, there are some consistencies between the other evidence offered in here. But I think that what's important about this is there's no evidence that it wasn't tampered with. And I think, you know, the government mentioned the Johns case, and I think that there's an important aspect of the Johns case that we haven't discussed, which is in order to preserve an issue for appellate review, there's no requirement that the movement, you know, incant some particular words or magic words, right? What's important is that the defendant or the person objecting puts the district court fairly on notice of the substance of the issue at a time when the district court can still address it. And Smith did that here. There's no basis to say that clearly in Johns, the government's objection was sufficient to put the district court on notice that the government was raising a best evidence rule objection. Smith did more here than the government did in Johns. So clearly if it was enough in Johns to put that district court on notice, Smith's objection here should have been enough to put the district court on notice here of his best evidence rule objection. And notably in Smith's motion in Lemony, he said, I don't know, the government won't tell us where this came from. It looks like it might be a screen recording of the original. If this is a duplicate, we're asking you to exclude it unless the government can establish that the duplicate accurately reflects the original. That's the essence of the best evidence rule right there. So Smith raised this issue, and then when the government, when the district court admitted the video over Smith's objection, it gave no analysis whatsoever. It just said overruled. It didn't give any authentication analysis. It didn't give any best evidence analysis. All right. You got anything else this morning, Mr. Parent? No, Your Honor. Thank you. All right. The court notes that you are court appointed, and we want to extend our sincere appreciation to you for undertaking representation. In this case, we could not discharge our duties unless members of the bar like you stepped up and undertook to do these tasks. So with that, we'll come down and greet counsel and move on to our next case.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., Allison J. Rushing